See Meadors v. State, 101 Tex. Cr. R. 336, 275 S. W. 829, and McKenzie v. State (Tex. Cr. App.) 11 S.W.(2d) 172.

■■ In his motion for new trial appellant attempts to set up purported remarks alleged to have been used in argument by the prosecuting attorney. No objections to these remarks are brought forward in bills of exception. As presented, we are at a loss to understand just what happened. There being no bill of exception complaining of any argument, there is nothing before us in regard to such matter. This court has committed itself to the proposition that ordinarily objection to the argument must be made at the time it occurred in order that the attorney making may, if he sees fit, withdraw or explain it. Sears v. State, 106 Tex. Cr. R. 219, 291 S. W. 547; Ross v. State (Tex. Cr. App.) 7 S.W.(2d) 1078; Harris v. State, 93 Tex. Cr. R. 544, 249 S. W. 485.

A careful examination of appellant's contentions leads us to the conclusion that error is not presented.

The judgment is affirmed.

PER CURIAM.

The foregoing opinion of the Commission of Appeals has been examined by the judges of the Court of Criminal Appeals and approved by the court.

**KENYON et al. v. JOHNSON.**

No. 9461.

Court of Civil Appeals of Texas. Galveston. March 20, 1931.

Rehearing Denied April 9, 1931.

Austin Y. Bryan, Jr., of Houston, for appellants.

Franklin & Blankenbecker, of Houston, for appellee.

LANE, J.

On the 16th day of January, 1928, Howard Kenyon and J. E. Browne each owned an undivided one-half interest in and to a certain lease of certain lands executed to them by one John Warren, by virtue of which lessees were granted the exclusive right to exploit and develop the land for rock and gypsum, subject to certain terms and conditions set out in the lease.

On the date above mentioned, Howard Kenyon and J. E. Browne, acting under the rights conferred by the lease, entered into a written contract with Harry K. Johnson wherein it is substantially recited that:

Whereas, Kenyon and Browne had theretofore entered upon said land and made exten-

sive developments of the same in the way of tests, shafts, and drilling operations, and were at such time actively and continuously developing the land by building of shafts thereon and making tests of minerals contained in and thereunder; and whereas, such operations had necessitated the expenditure of the sum of $17,500 in cash by Kenyon and Browne; and whereas to effectuate the production and sale of the minerals referred to it was at such time the desire of Kenyon and Browne to organize a Texas corporation for the purpose of buying and taking over their interests, rights, privileges, etc., held by them by virtue of the Warren lease; and

Whereas, such parties concluding that it was necessary to make further expenditures of moneys in the continued development of said minerals and in making sale thereof; and

Whereas, H. K. Johnson is desirous of associating himself with Kenyon and Browne and becoming the purchaser of an undivided one-third interest in and to the rights held by Kenyon and Browne by reason of said lease; and

Whereas, J. E. Browne and Howard Kenyon, called first parties, and Harry K. Johnson, called second party, have agreed to associate themselves together and have agreed that Johnson should become the purchaser of an undivided one-third interest in the rights of Kenyon and Browne in the lease, they have entered into the following written stipulations and agreements:

First. That J. E. Browne and Howard Kenyon, for and in consideration of the sum of $10 paid and other valuable considerations hereinafter stated, was selling and conveying to Harry K. Johnson an undivided one-third interest in the lease made by John Warren to first parties on the 7th day of May, 1927, covering 982 acres of land situated in Harris county, Tex.

Second. That in consideration of such sale to him, Harry K. Johnson agrees that from the date of the execution of the instrument he would assume one-third of the costs incurred by Browne and Kenyon in preliminary work in the exploration of the land and making tests, etc., and that he would pay a one-third portion of all expenses which might be thereafter incurred in the continued development of the land and properties for commercial production and sale of such minerals as might be produced, and that as a part of said assumption of such one-third part of such expenses, past and contemplated, he further agrees, as part payment of the one-third of the expenses theretofore incurred by parties of the first part which he had assumed, to pay to parties of the first part $1,250 on January 15, 1928, and the same amount on the 1st and 15th days of each month thereafter until he has paid a total sum of $5,000, *it being ex-*

*pressed that it was contemplated by the parties to the agreement that it would be necessary to expend the sum of $5,000 in the completion of the shaft that was then being put down on the properties by parties of the first part.*

Further stipulations of the agreement are substantially: "That after the advancement of said $5000.00 by Party of the Second Part, *if any further monies are needed for said preliminary work, development and preparation of said properties and minerals therein and thereunder,* for the commercial production and sale thereof, Party of the Second Part agrees and binds himself to make such further advancements in money, until such additional advancements, *if any shall be determined to be necessary by a majority of the Parties hereto,* shall make Party of the Second Part's advancement equal to an undivided one-third proportion of the total advancement made by all of the Parties to this contract, provided however, that said $5000.00 specifically referred to heretofore, shall be included and considered in determining Party of the Second Part's undivided one-third portion of the total amounts expended, the purpose and spirit of this provision being to require Party of the Second Part to assume a one-third proportion of the total amount expended and to be expended, if same is expended, in the event that the covenants and conditions hereinafter contemplated and set out are not performed and carried out" (italics ours); that the parties agree to organize and incorporate a company to be known as Tidewater Gypsum Company of Texas, under the laws of Texas, for the purpose of purchasing and buying the interest of the parties in the lands, minerals, etc., which said interest the parties agree to convey to said company.

The contract also contains the following provisions: "Party of the Second Part hereby expressly agrees and binds himself to Parties of the First Part and hereby warrants to Parties of the First Part that he will within six months from the date of the incorporation of said Company, and the transfer of the interests of the Parties hereto, to said Company, effect a loan to said contemplated Company in an amount not to exceed One Hundred and Thirty Five Thousand Dollars ($135,000.00) net, either by making said loan himself, or procuring said amount by the sale of all or any part of said $150,000.00 of bonds contemplated herein, at not less than ninety cents (90¢) of par, said Bonds not to extend more than Five (5) years and to contain redemption clause that same can be redeemed on or before maturity at accrued interest and 5% bonus or premium on 90 days' written notice of intention to redeem. That Parties of the First Part hereby agree and bind themselves that Party of the Second Part, if necessary to said loan or sale of Bonds, may bind said contemplated corporation to issue as much

as twenty-five per cent (25%) of the stock of said corporation to the lender of said proposed loan, as a bonus for the making of said loan."

After stipulating that 8 per cent. of the stock of the contemplated corporation to be issued should be issued to one J. J. Hargan, it is stated that it is expressly agreed that the party of the second part shall effect the loan mentioned *within six months* after the incorporation of the company; that a failure on the part of the second party to perform any of the terms and agreements of the contract within the time provided therein shall, at the election of the parties of the first part, forfeit any and all rights, claim, or interest of party of the second part in and to said properties.

It is also stated that it is agreed that second party is required to perform all the terms and agreements of the contract before his interest in the lease contract, or stock issued by the contemplated corporation, shall become absolute and vested.

The contract further provides as follows: "It is expressly understood by and between the Parties hereto that in the event Party of the Second Part shall make default in the performance of any of the covenants or obligations herein set out, within the time called for or in the manner herein provided, then, in such case, this contract shall immediately, at the option of the Parties of the First Part, after written notice to Party of the Second Part, be terminated and any sums of money paid or advanced by Party of the Second Part for work, labor or material contributed by Party of the Second Part to the common venture, shall, at the option of the Parties of the First Part, be retained by them as their specified, ascertained and liquidated damages, by them sustained by reason of such default of Party of the Second Part."

It is also provided that the parties shall keep such books, records, notations, and evidences of the amounts of moneys, work, and labor to be expended or that may be expended in the preliminary development of the minerals mentioned, so that all parties to the contract may know their respective rights, obligations, and interests.

H. K. Johnson paid the four $1,250 items called for in the contract at the times such payments became due, the last being made on the 1st day of March, 1928. He also paid a further sum of $700 when called upon to do so on the 22d day of March, 1928, and he also paid a bill for the company of $100 at the request of Kenyon and Browne. He also obligated himself, at the request of Kenyon and Browne, to pay $2,000 due by the company for certain machinery.

The working of the mine and the expenditure of the money contributed by the parties for the development of the property were un-

der the exclusive control of Kenyon, or of Kenyon and Browne; Johnson having nothing to do with either the working of the mine or the expenditure of the money.

On the 20th day of June, 1928, thirty days before the six months given him by the terms of the contract in which to procure a loan for the company had expired, Johnson desiring to have the mine inspected for the purpose of ascertaining what it showed as to gypsum deposit sent an inspector to the mine to make an inspection, but he was, under the direction of Kenyon, denied the right of inspection. It was conceded that without the information sought by Johnson he was in no position to procure the loan for the company.

On the 20th day of June, 1928, thirty days before the six months allowed Johnson by the contract to procure a loan for the company had expired, Howard Kenyon and J. E. Browne wrote Johnson as follows:

"Houston, Texas, June 20th, 1928.
"Mr. Harry K. Johnson,
"Ben Milam Hotel Bldg.,
"Houston, Texas.
"Dear Mr. Johnson:
"This is to call your attention to the terms of the contract between yourself and ourselves, that is J. E. Browne and Howard Kenyon, of date the 16th day of January, 1928, with respect to certain gypsum deposits at Hockley, Texas, owned originally by ourselves in which you took a one-third interest under the terms of the contract referred to above.

"This is further to call your attention to the fact that you have defaulted and failed to perform the conditions, covenants, agreements and considerations set out in said contract and as called for therein, within the time provided for said performances on your part, and by virtue of the forfeiture paragraph on page eight of said contract, copy of which you have, we are now formally electing to declare a forfeiture on your part, of any interest in the mineral lease on said gypsum and/or rock deposits referred to in our contract of January 16, 1928, and here now formally advise you of such election, and further formally declare a forfeiture of any and all right, title, interest, claim or privilege in and to said gypsum and/or rock deposit under and by virtue of said contract and to any right, title, claim, or interest in or to any or all stock in the Tidewater Gypsum Company of Texas, which may possibly have been issued to you, and further declare that said contract of January 16, 1928, is at an end, is null and void and of no further force and effect."

After the receipt of this letter Harry K. Johnson brought this suit against Howard Kenyon and J. E. Browne to recover from them the sum of $5,800, same being the

amount paid by him to them under the contract above mentioned.

After alleging the execution of the contract by himself on the one part and Howard Kenyon and J. E. Browne on the other, the payment by him of the $5,800 mentioned in our statement, and the assumption by him to pay a $2,000 obligation of the company, Harry K. Johnson alleged, substantially, that he had complied with all the terms and conditions of the contract and that he had at all times been ready, able, and willing to carry out his part thereof whenever he was called upon so to do, but that defendants Kenyon and Browne, notwithstanding his performance of his part of the contract up to June 20, 1928, and his willingness to continue to so perform his part thereof, on said date declared the contract at an end and refused to be further bound thereby, thus terminating the same; that they notified him that they had elected to declare all his rights in the properties and the money paid in by him forfeited to them; that he at no time refused to go on with the performance of the contract, nor did Kenyon and Browne, prior to the 20th day of June, 1928, notify him at any time that they had determined that additional advancements should be made by plaintiff to make his advances equal to one-third of the total sum made by all the parties to the contract; that they at no time demanded of him the payment of any sum other than that paid by him so as to make his payment equal to one-third of the payments made by all the parties. He alleged that while defendants represented to him that they had, prior to the execution of the contract, advanced to the enterprise the sum of $17,500 in cash, as a fact they had not advanced such sum, but that as the amount so advanced by them is peculiarly within the knowledge of defendants, he is unable to allege the exact amount so advanced, but he does allege that up to the 20th day of June, 1928, the time defendants declared his interest had been forfeited, he had advanced as much as each of the defendants had advanced.

Plaintiff alleged further that on the 20th day of June, 1928, "more than thirty days prior to the time when plaintiff was to effect the loan in an amount not to exceed $135,000.-00 as provided for in said contract, the defendants wrote this plaintiff that they had elected to declare a forfeiture of any interest in the said lease and of any right, title and interest plaintiff had in said lease and declared that the contract between plaintiff and defendants to be at an end and of no further force and effect; that prior to said time no notice whatever had been given him by defendants that it had been determined by them to be necessary that additional advancements should be made by him in order that his undivided one-third proportion of the total advancements should equal their respective advances nor did defendants ever at any time notify this plaintiff of how much, if any, additional advances they had determined were required of him. As a matter of fact said defendants by their said letter of June 20, 1928, elected to declare the contract at an end without calling upon plaintiff or notifying him as to what their determination, if any, was as to how much additional money should be required and without calling upon him for such advance. As a matter of fact said defendants declared said contract at an end without giving plaintiff any notification of their intention so to do, and without calling upon him to advance any sum or any particular sum of money whatever and without notifying him in any manner as to what determination, if any, they had reached with respect to what additional advances, if any, would be expected of him."

Plaintiff further alleged: "That having contracted to borrow on behalf of the company and on its credit $135,000.00, under the conditions and as in said contract alternatively set forth, and desiring to have a report upon the shaft which defendants had been drilling and which the plaintiff had advanced money to assist, this plaintiff desired to have the said shaft inspected for the purpose of ascertaining specifically what the shaft as thus far drilled actually showed as to the gypsum deposit, and in pursuance of such purpose this plaintiff on or about the 20th day of June, 1928, sent an inspector to the alleged mine, having given him a letter of introduction to those in charge of said alleged mine in order that said inspector might see and examine the same. Plaintiff alleges that said defendant Howard Kenyon, acting for both defendants, refused to permit the said mine to be inspected, thus prohibiting plaintiff from obtaining any information with respect to the same and making it impossible for plaintiff further to do anything with respect to obtaining a loan upon said property, and that plaintiff and his agent were thus refused by defendants and defendants' agents all access to and necessary information with respect to said mine upon which plaintiff had agreed and expected and was prepared and able and willing to make said loan. Plaintiff further says that said inspection was the right to which he was entitled under the contract, and the refusal to permit said inspection constituted such a flagrant and highhanded breach of the contract as that further performance by plaintiff was thereafter impossible and constituted on the part of defendants such a substantive breach of the contract while the same was in force and effect as to require said defendants under the law to return the money to plaintiff he had advanced under said contract."

Defendants answered by a general demurrer, by fourteen special exceptions, and for special answer averred that the plaintiff had not complied with the terms of the contract, in that he had failed to contribute money as required of him, though his attention was called to the expenditures being made, and the fact that he was behind in his contribution, and that defendants had advanced, up to the 20th of June, 1928, approximately $35,-000, of all of which Johnson was advised; that Johnson had only advanced $5,700 and willfully failed to make further advances after being advised to do so, though he was required so to do under the terms of the contract, and therefore defendants, under 'the terms of the contract, declared him in default and cancelled the contract when it became apparent that he could not make the advancements required of him by the terms of the contract.

All demurrers and exceptions addressed to the plaintiff's petition were overruled. The case was tried before a jury, to whom the court submitted the following special issue: "After plaintiff Johnson had completed payment of his $5800.00 advancement, did or did not Kenyon and Browne notify him to make further advancements in money?" The answer of the jury to such issue was: "They did not."

Upon the verdict of the jury and the evidence, the court rendered judgment that Harry K. Johnson should recover "from Howard Kenyon and J. E. Browne jointly and severally the sum of $5800.00, with interest thereon, etc.; that all interest of Harry K. Johnson in the contract sued on, the lease held by Kenyon and Browne, and any proceeds arising from such lease in money, notes, cash or obligations of any kind or character, as well as the interest of Harry K. Johnson in any capital stock or obligations, bonds or notes of the Tidewater Gypsum Company of Texas be in all things declared null and void and of no force and effect."

It further decreed that the contract between the parties to be at an end and of no further force and effect, "and that such conditional interest held by said Harry K. Johnson under the terms of said contract between plaintiff herein and Howard Kenyon and J. E. Browne, defendants herein, as to said leasehold interest, therein conveyed in and to the property therein described and the proceeds thereof, if any, and the conditional interest of the said Harry K. Johnson in and to any capital stock, obligations, note or bond of the said Tidewater Gypsum Company of Texas be in all things divested out of the said Harry K. Johnson and title to same vested in the said Howard Kenyon and J. E. Browne, an undivided one-half interest to said J. E. Browne and Howard Kenyon each respectively."

Howard Kenyon and J. E. Browne have appealed.

By appellants' propositions 1 to 7, inclusive, it is urged that the court erred in overruling appellants' general demurrer and their fourteen special exceptions addressed to the plaintiff's petition and in not sustaining the same, and in not rendering judgment for appellant upon their request therefor.

■■ We overrule the contentions so made. In determining the sufficiency of the petition the well-settled rule requires that the court should give to the petition every reasonable intendment in favor of its sufficiency. After a careful consideration of the plaintiff's petition and applying the rule stated, we have reached the conclusion that it is not subject to either the general demurrer or any one of the special exceptions addressed to it which were overruled by the trial court.

■ By their fifth proposition appellants insist that the court committed fundamental error in rendering judgment for appellee upon his petition, in that such petition and the contract made a part thereof show that the contemplated Tidewater Gypsum Company of Texas was an indispensable party to the litigation, as its rights and interests would be so affected by the result of the suit as to require it to be made a party to the same, and therefore no effective judgment could be rendered in this cause without its presence before the court.

There is no merit in appellants' contention. Nowhere is it disclosed by the plaintiff's petition, or by anything in the answer of the defendants, that there was such a corporation as the Tidewater Gypsum Company of Texas. The only reference made in the entire record, including the statement of facts, to the Tidewater Gypsum Company, is the recital in the contract entered into between Kenyon and Browne and Harry K. Johnson. In such contract it is recited only that the parties agreed to *organize* a corporation. There is no evidence, so far as we have been able to find, that such a company was ever chartered. No stock of the company, as far as shown, was ever issued to Johnson or to any one else. The whole theory of the suit by both parties seems to have been that it was strictly one by Johnson against Kenyon and Browne as individuals. Johnson's suit is one to recover from Kenyon and Browne $5,800, which he alleges they received from him and wrongfully withheld from him. It is not shown that the contemplated company, as a separate entity from Kenyon and Browne and Johnson, had any interest in the subject-matter of this suit. Though the judgment in the cause was rendered on the 6th day of June, 1929, and appellants' motion for new trial filed on the 29th day of June, 1929, and amended on the 24th day of September, 1929,

350

no complaint was made in either that the Tidewater Gypsum Company was not made a party to the suit. Indeed, it is apparent that the contention that such company was an indispensable party was an afterthought which occurred to appellants for the first time when they filed their assignments of error on the 5th day of December, 1929, six months after the judgment in the cause had been rendered. We do not feel called upon to further discuss a proposition of law submitted in the brief that is foreign to any issue presented by pleadings and which was in no way presented during the trial of the cause.

As shown in our preliminary statement, the contract between the parties of date January 16, 1929, provided that Johnson was to advance to the joint enterprise four payments of $1,250 each, the first on January 15, 1929, one on the 1st of February, 1929, one on the 15th of February, 1929, and one on the 1st of March, 1929, a total sum of $5,000; that after the advancement of the $5,000 was made, and if any further moneys were needed for the carrying on of the preliminary work or development of the properties and minerals, that Johnson should make such further advances, *if it is determined that such advances were necessary by a majority of the parties*, until such additional advances shall make Johnson's advances equal to one-third portion of the total advances made by all the parties.

Appellants contend that the evidence shows that appellee was advised by them that the majority of the parties to the contract, after the $5,000 had been paid by appellee, and after he had paid a further advancement of $800 and had assumed an obligation of $2,000 that said majority of the parties had decided further advances were needed to carry on the work of development and they had advised Johnson that such advances were so needed, and that after being so advised appellee Johnson failed to make his advances equal to a one-third portion of the total advances made by all the parties, and that by reason of such failure Johnson forfeited all his rights in the enterprise and the money he had paid, as a matter of law, and that the court erred in not so holding and in not directing a verdict in appellants' favor; but if they are mistaken in such contention, the finding of the jury is so against the great weight and preponderance of the evidence as to be clearly wrong, and therefore the judgment should be reversed and the cause remanded.

Appellee, on the other hand, contends that the evidence was sufficient to support the finding of the jury that after appellee had paid the $5,800 appellants did not notify him to make further advancements in money.

We have carefully examined the entire statement of facts and have reached the conclusion that there was ample evidence to support the finding of the jury.

Appellant also contends that the judgment should be reversed for this: That a schedule showing the advancements made by them was introduced in evidence and placed in the hands of the court stenographer; that before the case was submitted to the jury appellee got from the stenographer such schedule and failed to return same; and that by reason of such fact the schedule did not go to the jury for its consideration thereof, to the injury of appellants.

Upon the complaint of appellants of such alleged misconduct on the part of appellee, the trial court, upon a request of appellants for a finding of facts and conclusions of law with reference to such alleged misconduct, found that: "Just before the jury retired and after the conclusion of the testimony, the plaintiff, Harry K. Johnson, went into the office of said C. L. Leach, stenographer, and asked to be given the schedule introduced by defendants and that same was given to him." That Johnson did not return the schedule prior to the retiring of the jury or at any time since, but that all the individual vouchers, checks, receipts, and canceled bills from which the schedule was made were offered in evidence and were taken by the jury into the jury room, and that the schedule was only a résumé of the vouchers, checks, and receipted bills that went to the jury; that counsel for defendants in his argument to the jury discussed the data contained in the schedule and argued to the jury from a copy of such schedule the total amount of the items contained in the schedule as well as the several items going to make up the schedule.

### Conclusions of Law.

"I further conclude that even though this schedule did not go to the jury room with the jury it would not be grounds for a new trial, because the jury saw the exhibit while they were in the jury box and saw each item of such exhibit established by documentary evidence by means of a check of vouchers or receipted bills, and the evidence of such expenditures reflected in such schedule was before the jury in its original form of checks, vouchers and receipted bills, and such documents were really of higher value than the schedule itself."

Having reached the conclusions shown, the court overruled defendants' motion for a new trial based upon the alleged misconduct of plaintiff.

Taking into consideration the facts and conclusions found by the trial court, we are not prepared to hold that the court abused

his discretion in overruling appellants' motion for new trial.

Having reached the conclusion that appellants have presented no cause for a reversal of the judgment, the same is affirmed.

Affirmed.